Mr. Hunt, I think you're going first. Is that correct? You want to tell me how you're splitting your... Yes, Your Honor. Nate Hunt on behalf of Petitioner City of Los Angeles. We'll be sharing our time with Petitioner Intervenor Culver City. I will be presenting for 15 minutes Culver City will be presenting for five minutes and as part of my containment, I'm going to try to reserve three minutes for rebuttal. If you could speak up a little bit, I'd appreciate it. Sure. Go ahead. State your appearance please. Good morning, may it please the court. I'm Nate Hunt appearing on behalf of Petitioner City of Los Angeles. This case involves the Federal Aviation Administration's decision to make changes to major flight arrival procedures at Los Angeles International Airport. The arrival procedures direct aircraft to fly across Los Angeles, its neighborhoods, historic districts and parks, and other properties before their final approach to the airport. FAA's record shows that FAA violated the National Environmental Policy Act, Historic Preservation Act, and Section 4F of the Department of Transportation Act. And I'll refer to those collectively as the Federal Environmental Laws. FAA failed to conduct an environmental review of flight procedure changes before it published the procedure on May 24th, 2018. Now procedures, flight procedures are complicated and they are technical. But the issue before this court is straightforward. No FAA official or relevant decision maker conducted an environmental review or was aware of any environmental analysis before the flight procedure was made. That is a fundamental violation of Federal Environmental Laws and FAA's regulations requiring that one, an FAA decision maker is fully informed of the environmental consequences of a decision before the decision is made. And two, that the agency, that FAA, document its environmental review. These requirements are critical because flight procedures that direct aircraft over thousands and thousands of people have the potential to significantly impact the communities and resources that lie beneath the flight paths. Mr. Hunt, can I ask you a question before the merits is by the way of jurisdiction. And the city did not file its petition within the 60 days required by section 46.110. And you assert that there was an agreement to toll that deadline. I have a few questions about that. Was it a formal agreement? How did it come about and when? And was it entered into so that the city of Los Angeles, there's a number of them, I'm sorry. Is whether that 60 day deadline is jurisdictional or whether it should be treated as an ordinary statute of limitations that the parties can toll? Certainly. Well, first, the parties in July 2018, the city of Los Angeles inquired about the environmental document or the environmental analysis of the procedures because none had been entered into a tolling agreement whereby they agreed that tolling that the agreement would be reasonable grounds to file the action outside of the 60 day limit under 46.110. You can't. Where is the tolling agreement? I don't believe it's in the record. Yes, so I'm just curious about that because I had the same question as Judge Beatty and I just wanted to make sure we did have jurisdiction and it looks like nobody's disputing this agreement, but I didn't see it and I was curious about that. Yes, I don't believe the tolling agreement has been before the court and it's not filed in the administrative record and I believe the tolling agreement is actually extended. Both parties were trying to avoid litigation. The city of Los Angeles was interested in the environmental impacts and the environmental analysis of the procedures and the agreement that both parties would agree that the tolling would be reasonable grounds to file the petition for review outside of the 60 day limit was agreed to so the parties could discuss the procedures and potential modifications to the procedures. Of course, the parties agreement can't confer jurisdiction on this court so it sounds as if the parties just assumed that they could toll this as a statute of limitations and that it wasn't a jurisdictional requirement. I'm not sure this court has ever reached that conclusion although there may be some authority from out of circuit. What should we rely upon to conclude that this is not a jurisdictional requirement? Well, you don't have to conclude that it's a jurisdictional requirement whether or not it's a jurisdictional requirement. The statute provides that the court may allow petition to be filed after the 60th day if there are reasonable grounds for not filing within 60 days and that's kind of the heart of the agreement that the parties entered into is that tolling or delaying litigation with the goal of coming to some settlement is a reasonable, undisputed reasonable grounds to delay litigation. And so that it sounds like what you're suggesting is a decision for the parties to make not the court which is pretty risky position for the parties to take that they can just decide these are reasonable grounds and not take other steps to make sure they have jurisdiction. Right, no, it's the decision for the court but I think the parties discussed and I actually wasn't involved in those negotiations but the parties discussed that this would be a reasonable grounds and the FA would not object to the petition being filing filed after the 60 days. Can I ask you also a record question here? There's some debate about whether the record needs to be completed or supplemented and I'm not quite sure I understand the practical difference. Is there one? Yes, the city of Los Angeles moved to complete the record. It's our position that FAA omitted relevant documents that were before FAA when it made its fight procedure decision. So under the standard administrative procedure act standard that any documents that are directly or indirectly relied upon by the agency should be included in the administrative record. If the court determines that the city's documents aren't included, should not be in the record, then the city also requested that those documents be considered as extra record documents under the exceptions and namely the exception that documents can be considered by the court when they help explain an agency decision or can shed light on whether the decision by the agency considered all the relevant factors. FAA has moved to supplement the record asking for the court's consideration of extra record documents. It wasn't clear from the record did the amended routes change the vectoring process at all? It's unclear. FAA did not evaluate before it made its decision whether the routes have been changed. That's the heart of the this case. There was no environmental review of the potential impacts of the of the adding specifically adding the 6,000 foot minimum altitude at the gato waypoint. Based on our investigation adding a 6,000 foot altitude where none existed is a significant change and it's also altering the way the air traffic controllers are directing aircraft on procedures. When you add a 6,000 foot altitude where none exists, we believe the air traffic controllers are actually diverting more airplanes off the procedures and at lower altitudes and the reason is is that as FAA concedes it's hard it's difficult for aircraft to smoothly transition from 6,000 feet on the procedure down to the final approach. Is there anything in the record that shows there's more vectoring happening now with the minimum 6,000 feet minimum altitude? Not in the record no but but there there is nothing in the record regarding the vectoring aircraft. I mean that that's really the heart of this case. FAA published the procedures in May 2018 without any environmental review of the impacts. The difficulty I'm having here is you know is your complaint now really about the original routes or really the amended routes? In some ways it seems it's really more about the original routes and that's already been adjudicated so that that's the struggle I'm having and kind of looking at the record here. Right well I will use FAA's words in their internal records in July of 2018. The procedures published in May 2018 are not Metroplex procedures. They were not included. These changes that occurred years later were not included in that environmental analysis and so the city is concerned about the environmental analysis and the potential environmental effects of the changes to the procedures and frankly it I mean FAA has called these changes nominal or minor but that's not that's not based on anything in the record. Procedures are complex. FAA knows that any modification to a procedure has the impact to have unintended consequences. It impacts it can impact the way air traffic controllers direct traffic. That's why FAA has detailed regulations requiring that it conduct an environmental review of every procedure even even even amendments that it calls minor. Mr. Hunt I need to ask you something else. Assuming we agree with you and we for sake of argument we conclude that the FAA violated these statutory requirements. They have submitted a declaration from Mr. Stewart asserting that if we vacated the amended arrival routes that would cause delays at LAX that could increase the burden on the air traffic controllers managing air traffic which could relate in potential air and safety issues and it would resolve an increased aircraft noise. So does the city dispute Mr. Stewart's assertions on the effect of vacating the amended routes? Absolutely and it would have been nice to depose Mr. Stewart. Vacature is the ordinary remedy. This court vacates agency decisions when the agency violates the National Environmental Policy Act and other federal environmental laws and if you've ever been in litigation with FAA you're going to hear two things. That procedures are very complicated and will lead to delays and doomsday predictions. So wouldn't vacating also have environmental consequences? Perhaps. On vacature, vacature ensures that FAA is going to adequately consider all the environmental impacts of the procedures and it will leave it up to FAA to determine how it handles airspace aircraft arriving at LAX during vacature and remand. But really what FAA's vacature argument boils down to is it's going to take time and money and those don't justify, those are not sufficient arguments against vacature. It failed to take the time and money to environmentally review the documents before, environmentally review the published procedures before they were published. So I mean FAA, Mr. Stewart has testified that FAA can safely and efficiently operate aircraft during vacature and remand. I'm sorry I interrupted you. No, I think Mr. Hunt anticipated my question which is why the city wouldn't feel as if they received an appropriate remedy if we chose not to vacate the FAA's decision. I have another question Mr. Hunt. It seems like our case law says that public opposition is not enough to make a project controversial on environmental grounds. So if public opposition is not enough, what I guess exactly was the extraordinary circumstance preventing the use of a categorical exclusion here? Well before I answer your direct question, let's be clear. There was no consideration of extraordinary circumstances before the flight procedure decision was made on May 24, 2018. So everything, the environmental documents that were prepared post-decision and their conclusions on environmental controversy, those were pre-ordained really. FAA had already filed, had already agreed to pull. Litigation was on the horizon and if you look, FAA has these conclusory statements in the post-decision document about controversy that aren't supported by any analysis. Public opposition is supposed to be considered in determining controversy. And in the environmental document that FAA prepared after the decision, several months after the decision, FAA concluded that public opposition was unknown. Can you point to any similar cases in which our court has held that an agency abused its discretion in applying a categorical exclusion? Well again, no categorical exclusion was determined before the flight procedure decision. And there's plenty of case law in the Ninth Circuit, specifically California v. Norton, Tribe, that state a post-decisional categorical exclusion is not valid if there's no documentation showing that the environmental review was made before FAA made a flight procedure decision. All right, thank you. I don't know if Judge Lee or Judge Beatty have any other questions. I think they're out of time, but I'll give you a couple minutes for rebuttal. Thank you. Is it Lichman or Lichman? Lichman, Your Honor. Yes. Please state your appearance. Thank you. May it please the court, my name is Barbara Lichman for intervener petitioner, of Culver City. First, I would like, if possible, to address the jurisdictional question. I think it's not as complicated as I thought originally, because 49 USC 46110A says, in pertinent part, the court may allow the petition to be filed after the 60th day if there are reasonable grounds for not filing by the 60th day. Therefore, it's within the discretion of this court to allow the extension of statute of limitations. In this case, there is good cause, because we all agreed, both the city of Los Angeles and the FAA and ultimately Culver City, that we would all live by this extended deadline and a tolling agreement is not allowable in this kind of a case. When did the city of Culver City, when did they join this tolling agreement? Was it after? It was about a month. Yes, we discussed it with both parties and it was decided that because the original tolling agreement had been granted to the city of Los Angeles, that an intervener who was allowed to intervene could also live by the same time deadline. So, that was the basis. So, it sounds like the way this played out is that the city of Los Angeles sent an inquiry to the FAA and then shortly thereafter, the parties entered their tolling agreement, which was within the 60 day period of the statute. The Culver City came along sometime after that and seeks to join that tolling agreement after that. That's correct. That's correct, your honor. Then the second issue about the RNP and did it change vectoring? The answer is yes, because here's the reasoning, because the project changed dramatically from the original concept. This project took away the RNP that was in existence in the original 2016 proposal, took away the required navigation performance, the continuous descent approach, and instead substituted vectoring, which increased vectoring over that which had previously been used or changed it to adhere to these new flight paths. So, yes, there were changes. We're not going to step into the shoes of the FAA with respect to technical expertise except to say this was in the record. So, I wanted to clarify that as well. Third, there was no environmental review, which has been adequately and excellently touched upon by Justin, I'm sorry, by Nate. However, even if there had been environmental review, which there was not, the use of a catechs, categorical exemption is impermissible here for the following reasons. As Nate pointed out, a responsible official must review before the decision to allow a categorical exemption or exclusion for extraordinary circumstances. That's in FAA order 1050.1F, section 5-6.5, et cetera. The factors, by the way, he didn't, whomever it was, he, she did not review. The factors to be considered by a responsible official were, among others, impact of noise levels on noise sensitive areas, whether the project would be highly controversial on environmental grounds, and for airspace procedures such as this one, whether there would be what we call noise focusing or increased impact, a narrowing of the noise footprint such that there is noise focused on specific areas that had not necessarily been overflown before. None of these procedural requirements was observed, as I mentioned, and the extraordinary circumstances did exist in the record. For example, years of controversy starting before the 2016 litigation and going through, in the record, through 2019, which was after the implementation, letters from the City of Los Angeles to the FAA protesting this for the noise impacts that were being visited upon its citizens. Let me ask you, the same question I asked Mr. Hunt, is controversy enough? Doesn't there have to be something else there besides controversy? Well, controversy is enough in this context to determine whether or not, number one, there was no environmental review, but when there was allegedly environmental review, they relied on a CADEX. Controversy is enough to foreclose the option of using a CADEX. So, if they had decided to do an environmental assessment or environmental impact statement, I would say controversy might not be enough. But in this case, controversy is the linchpin that closes the door to the possibility of the use of a CADEX. And the record is replete with that controversy. And of course, there's the issue of impact of noise levels and noise sensitive areas. Residential areas of which, as you probably know, is replete. These flight paths changed over residential areas and the citizens who were crying the loudest to our public officials were in fact residents, occupants of residential properties. So, that too was a militation against the use of a CADEX. Well, a CADEX was what to focus the noise in narrower corridors so that the airlines could save fuel. So, for all sorts of reasons, which I've just detailed a few and there are more in the statute, a CADEX was never going to be adequate to document the environmental impact of this project. Thank you. I will grant the court the rest of my time. Okay. I mean, let me see if Judge Brady or Judge Lee have any further questions. I have one and I'm sorry. I know we've taken you a couple minutes over your time. If we remanded but did not enter a vacature, why would your client, why would their claims not be addressed? Well, I think what you're asking is we don't vacate. Will our, will we get sufficient remedy? Is that the question? Well, there are two kinds of remedies in this situation. One is that the public be allowed to know, be informed through an adequate environmental review of what will be visited upon it so that, number one, the possibility that the agency may change its decision when a full environmental review is conducted and, two, the public may work with the agency to mitigate those impacts, none of which is possible at this time. Second, I mean, vacature would, of course, be, how shall we say, an impetus to the FAA to actually get the job done that we're asking to have done, which is a full environmental review. So, truthfully, one precedes the other, but is helpful to creating the reasonable notification to the public that they deserve. Are there no concerns about danger or other adverse environmental impacts if there's not, I mean, if there is a vacature? No, your honor, not a single one. Remember, LAX operated for 40 years without any danger before these procedures were implemented. We have no reason to believe that it would be less safe if they are gone temporarily. They're mainly to benefit, I won't go into the political details except to tell you that there is much in the record about airlines testimony concerning how they want to save fuel. So, that's part of the deal, but it's not less safe by any stretch of the imagination. None of us wants to believe that our air traffic controllers can't handle what they've been handling for 40 years. All right. Judge Ling, any other questions? Okay. Thank you. Mr. Heminger, could you please state your appearance? Good morning. May it please the court, Justin Heminger for the Federal Aviation Administration. I did have one request before we get started. If my friend for the City of Culver could make sure she's muted, just to make sure there's no feedback from her microphone. So, your honors, I heard this morning a number of questions about the administrative record and also about jurisdiction under 46.110a. But with the court's permission, I'd like to start with the issue that I think is front and center in this case, which is the FAA's environmental analysis. So, to take the court and pardon the expression to 30,000 feet, I think it's helpful to start with a little bit of history and background here. In 2016, the FAA put into place a Metroplex project. One piece, a small piece of that project was the original rival routes that are in some ways part of this case. But at that time, what the FAA did was an environmental assessment under NEPA. And the FAA took a hard look at the environmental effects that would come from putting these, the original rival routes into place. And the FAA determined there would be no significant effects from that. I think it's helpful to judge Lee's question about what sort of was going on with vectoring the point to the 48. As an example, that's the whole one arrival route. That's the original rival route is that EA 48. And if you look at that page, it says under the instructions to pilots, it says expect radar vectors to a final approach course. Then if we fast forward to 2018, the FAA decided that after implementing the Metroplex project, there were some small tweaks, adjustments that it needed to make to these rival routes. Most of those changes concern efficiency and safety. And most of those changes actually occur over the ocean at an altitude of somewhere around 10,000, 11,000 or 12,000 feet. So most of those changes that the FAA was contemplating in 2018, in fact, could not physically affect the city of Los Angeles. But in any event, to go back to Judge Lee's question, if we look at the next page in the record, this is ER 49. This is the whole two arrivals. So these are the minor amendments that the FAA made. And I'm not going to go through all of the minor changes that the FAA made to this original rivalry in 2016. But I want to focus the court on the fact that in Hull two, you will see again, the same phrase expect radar vectors to final approach course. And my point with that is that vectoring was a part of these original rival routes in 2016. And the FAA did the environmental analysis for those at that time. Now, it did make amendments to those change to those procedures in 2018. And it studied the environmental effects of those changes. But it wasn't required to go back to 2016 and reinvent the NEPA wheel and do another environmental assessment of the original rival routes. At that time, it made minor changes in 2018. So, like, if I can ask you a question regarding the spreadsheet in the administrative record, because you referred to that as the environmental review. Are you saying that you didn't need to do an environmental review? No, Your Honor, the FAA needed to do an environmental review. And it seems like you're arguing that the spreadsheet was your environmental review or complied with the FAA's procedures for using a categorical exclusion. I guess that's the more specific way you argue the spreadsheets. Am I correct on that? That's correct, Your Honor. Okay, so don't those procedures require the FAA to at least state the categorical exclusion it's using? So, Your Honor, you're referring to the FAA's order. That's order 1050.1f. And I believe you're referring specifically to the paragraph 5.3d. And it says there's no prescribed format for a categorical exclusion, but it should cite the CADEX used. And I would agree with you that this spreadsheet does not, as a technical matter, cite the categorical exclusion specifically invoked here. So, I would agree with that. Is there any precedent for the FAA using a spreadsheet alone as its categorical exclusion documentation? Not a core precedent, Your Honor. What I would say about that is if you look at the prior paragraphs in order 1050, and this is paragraph 5.3, sub a, 1050.1f, and this is at SCR supplemental excerpts record 75, SCR 75. If you look at that, what it says about categorical exclusions, where you start, is with simple documentation. And simple documentation the FAA describes as documentation that may be already included in documentation prepared during the course of normal project development. So, this is the sort of, backing up for a minute, the spreadsheet has, lists almost 100 changes, modifications that the FAA was considering making at that time, at that time in 2017, to various flight procedures in the area. We're talking about the entire Southern California metro airspace, roughly 21 airports, and the FAA is continually making changes to its flight procedures to ensure that they are safe, to ensure that they are efficient, to ensure that they're working together. So, that spreadsheet, if you, and the spreadsheet itself is in the record, er, I'll have to, I'll have to, based on your own procedures, it seems like there are extraordinary circumstances when the effects of a project are uncertain. And I'm trying to figure out if you're arguing there was no uncertainty here? Your Honor, I'm not sure where the uncertain, the language, the uncertainty language comes from, but the particular extraordinary circumstance that the City of Los Angeles is relying on to argue that there were extraordinary B sub 10. And what that, that particular exception is for is, it says that, impacts on the quality of the human environment that are likely to be highly controversial, and here's the key, on environmental grounds. And then the order goes on to define what that means. It says highly controversial means a substantial dispute involving reasonable disagreement over the degree, extent, or nature of environmental impacts. And so, yes, Your Honor, to answer your question directly, the FAA did an environmental analysis of these small changes here and concluded that there was no reasonable disagreement over their environmental effects. In fact, the only... I'm trying to understand the boxes that you checked. You know, if you check the boxes of both yes and no. When asked whether the amended arrivals had minimal altitudes above 3,000 feet and stated that the public opposition was not known in the initial environmental review. Is that, it seems like, I just wanted to see if you could explain why the FAA did that and doesn't that lead to one, I think, uncertainty and then also, which would cause public controversy or a lot of public comment? Well, Your Honor, there's public opposition, clearly. That's why we're here today. There's public opposition to these arrival routes. But on the specific question, you're referring to ER27 in the initial environmental review where the FAA checked both boxes on will changes occur above 3,000 feet. We've submitted a declaration from the environmental specialist, Ryan Weller, the FAA environmental specialist who prepared this initial environmental review. And as he says in that declaration, it's a mistake to have checked both boxes. Only the yes box should be checked. The other thing I would just point out here on this specific question is Supreme Court's going back as far as State Farm. The question is whether, it's not whether the agency has done a perfect job of dotting every I, the question is whether the agency's decision can be reasonably discerned. And here we would submit that this is a 63 page initial environmental review solely for these minor amendments, most of which took place over the ocean. And if you look at all that, I think the agency's path here can be reasonably discerned. The agency clearly was invoking this categorical exclusion that applies to changes that occur over 3,000 feet. Judge Lee, it looked like you had a question. You know, you know, it's beyond the record, but I mean, why couldn't the FAA have submitted a declaration from Ms. Cass? I mean, the concern I have here is, you know, it's almost like a game of telephone. You know, someone from the FAA is going through Ms. Cass's files and looking at them and trying to construe what she thought or what she did to justify the actions. You know, either if it was Ms. Cass who had submitted the declaration and explained exactly what she did, you know, maybe we could get more credit to it. But that's a concern I have here is, you know, someone else is trying to figure out what she did from documents from her files. Your Honor, I agree that a declaration from Ms. Cass would be the most useful for the FAA. I believe in our brief, we noted that she had voluntarily left the FAA, unfortunately, around the time that these amendments in May of 2018 were published. So Ms. Cass doesn't work for the FAA now or really since 2018. And so we've done what we, the FAA believed was the next best thing, which was to submit a declaration from another environmental specialist, Ryan Weller, who I would point out, certified the administrative record in this case, actually prepared the initial environmental review and signed the related confirmation memo. So look, we're not arguing that this is the perfect way for the FAA. The FAA has to manage the national airspace. The FAA has to ensure that flights are, flight procedures are adjusted on a continuing daily basis across the nation. And here it did, it did what I will acknowledge as a less than perfect environmental review before publishing them, documented that in a less than perfect fashion in the spreadsheets. And then when the Los Angeles asked about it, it went the extra mile and did a more fulsome initial environmental review, 63 pages of analysis. After all of that, the only thing that the city of Los Angeles has pointed to as a change in these flight procedures that would matter at all to it would be the addition of a 6,000 foot minimum altitude at the end of these arrival routes. That's the point it out. The city's never explained how a minimum altitude flying at 6,000 feet can somehow cause more noise when his complaints have always been about flights flying below 6,000 feet. Let me ask you about NHPA just real quickly, because it looks like the NHPA and section 4F, but I am curious about the consultation requirement and did the FAA ever consult with the city of Los Angeles or Culver City about the proposed findings? No, your honor, the FAA didn't do a consultation when it amended the arrival routes in 2018. But our point is that the FAA did a consultation when the original arrival routes were put in place in 2016 as part of the environmental assessment, and we've cited the places in the record that document that consultation. So again, fast forwarding to 2018, the question is, were there any adverse effects that could have had an impact on a historic property within the city's jurisdiction? And the FAA had concluded that there were no significant environmental effects, no adverse effects, and so it didn't trigger a consultation obligation. And can I have you respond to Ms. Litchman's argument regarding the vacature and and whether or not, you know, if we were to go that route with respect to that, to that, what remedy to impose? Because you assert there may be, I think the FAA is asserting there may be environmental consequences to vacating the amended arrival routes, but I'm trying to figure out if there's any data supporting that conclusion. Your Honor, we don't have data. We have a declaration from the FAA official, Jeff Stewart, explaining what the FAA would anticipate are the consequences of vacater. And so I'm happy to walk the court through what those consequences would be, but as Mr. Stewart explains in his declaration, that procedurally, the way that the FAA made these minor changes, it entered a new set of flight procedures into their air system. So vacater here would not simply address what should be the city's actual concern, the minor changes, right? The 6,000 foot minimum altitude that a vacater by the court would actually have the broader effects of removing these flight procedures from the airspace system. That would require the FAA to effectively reroute and sort of do a patchwork of flight fixes until it has time to come up with new flight procedures to go through these for flights coming from the north, from Seattle and San Francisco. I did also want to ask you about jurisdiction and I guess the question for you now is whether the tolling, do you agree the tolling presents reasonable grounds here for the delay in filing of the petition for review? A couple points on that, Your Honor. First, my view is that we, I would have to look back at the language of the tolling agreement, but the government has not argued that these are not reasonable grounds. Probably, I don't know if the tolling agreement says that we agree that these are, but I would say our position is that we would agree these are reasonable grounds. I would have to review the tolling agreement itself more closely to tell you that's for sure, but before you today, I would say we would agree that these are reasonable grounds, but as both Mr. Hunt and Ms. Litchman pointed out, you know, it's still for the court to determine under 46.110a that these do constitute reasonable grounds. So, and to Judge Beatty's, oh go ahead, Judge Beatty. Well, I had a question for you about Mr. Weller's declaration where he asserts that the spreadsheet is dated November 16, 2017, but the spreadsheet is undated, so what's the basis of Mr. Weller's knowledge or statement that the spreadsheet is actually dated from November 2017, and is there any metadata from the spreadsheet that could be used to determine when it was created and edited, and if so, did the FAA undertake that review? Your Honor, I would suspect there is metadata, so this is an Excel spreadsheet, it's a Microsoft spreadsheet, so we provided the raw file to the City of LA during, and as part of the administrative record, obviously for the court in preparing excerpts of record, the parties formatted that and printed that into PDF, but I'm sure it is possible to look back when files get transferred, sometimes metadata gets lost, so I'm not 100 percent sure what the basis for Mr. Weller's determination is that it's that specific date, but I would suspect there might be some metadata or file data that would have shown him that. Mr. Weller stepped into Ms. Cass's role after she left, and so he sort of took this over, and his declaration explains how we go from the spreadsheet to the FAA, realizing that that's where Ms. Cass was documenting her environmental review, and then prepares, Mr. Weller then prepares the follow-up confirmation memo, an initial environmental review that confirmed that a categorical exclusion was the proper level of NEPA review. I see my time, I believe my time has expired. I do know, Judge Merguia, you had asked about the administrative record. I'm happy to address that or any other questions the court has. I'm also happy to address the notice issue on the website. Excuse me? No, I would appreciate your, is there a difference in your view between complete and supplement, what is your position on that? Yes, Your Honor, there is a difference, and we believe that supplementation is the correct approach here. The FAA certified an administrative record and said that the record was complete. Los Angeles had pursued FOIA requests, and the FAA produced its internal emails discussing some of these, some of these issues, and the court certainly should look at those and determine what their value is. When you talk about some of these issues, you mean the emails that went back and forth about where is the, where's the justification for the CADEX or extraordinary circumstances and all of that? That's correct, Your Honor. We would ask the court, and our position was the court certainly should feel free to look at all the evidence. The FAA has nothing to hide here, but if the court looks at those documents and the spin that Los Angeles has put on them, then the court should also look at Mr. Weller's declaration, which looks, which explains what those documents meant and provides the FAA's on the facts. Judge Beatty, Judge Lee, do you have any further questions for Mr. Hemmingbridge? Okay. Mr. Hunt, well first I'll give Ms. Litchman a minute, and then I'll give Mr. Hunt two minutes. Ms. Litchman? Ms. Litchman, is the court, we're talking about rebuttal? Yes, one minute. Okay. I'm sorry, I can't hear you Ms. Litchman. I thought Mr. Hunt was going to go first. No? Or you prefer if I go first? That's fine, I can go with Mr. Hunt first. Mr. Hunt, I just wanted to address a couple items. I appreciate the court's focus on extraordinary circumstances. There are other grounds for extraordinary circumstances and that are impacts to National Historic Preservation Act properties and impacts to Section 4F properties. There was no determination made before the flight procedure decision, and I know the FAA, throughout their answering brief and today, has characterized those personal notes of Janelle Cass as the agency's determination, but I urge the court to look at the certification of the record. At the beginning of this case, before FAA had developed its defense strategy, before FAA disclosed emails showing that FAA itself identified no environmental review had been prepared in the summer of 2018, and before FAA faced a motion for summary disposition. In that certification, Ryan Weller, whose name you are familiar with, attested that FAA did not document any environmental review or determination before implementing the procedures. FAA's characterization of these notes, as its determination under these federal environmental laws, was purely concocted in the middle of litigation. In their answering brief, it's refuted by Weller's initial testimony in the certification for record, and that's ECF number 30. Also, with respect to the confirmation memorandum, it was prepared months after the decision. FAA has never said to this day what it was confirming. That was a litigation defense memo. It had already agreed to toll for the city of Los Angeles to toll this case, and although it makes conclusions about impacts to historic preservation properties and parks, there's no meaningful analysis. It refers to flight track data at ER 29. There's no flight track data in the record. It refers to noise screening analysis that FAA purportedly prepared. There's no noise screening analysis data or documentation of the record. At ER 33, this is the initial environmental review. It refers to a review of individual properties. Well, there's nothing in the record demonstrating that FAA reviewed impacts, Historic Preservation Act properties, or public parks in the city of Los Angeles, and without that documentation, you cannot hold that initial environmental review as an adequate document. Thank you, Mr. Hart. Ms. Litchley. Thank you, Your Honor. There is so much in the FAA's presentation that I would like to respond to, but I have a moment, so I would like to refer the court to the case of Kaiser, K-I-S-O-R-V, Wilkie. That's a Supreme Court case, 139, S Court, 2400. That's the only site I could actually find, in which that court says, and it was dealing with our deference, not Chevron deference, but imposed the same restrictions. It said that a categorical exclusion is not appropriate where there is, where it is based on a post hoc rationalization. Mr. Heminger has used the Weller Declaration repeatedly to justify the absence of certifiable environmental review, but the Weller Declaration long postdates implementation of this project, which, by the way, an environmental review must precede. So even if, for argument's sake, the Weller Declaration could take the position of environmental review, it came too late, as did the spreadsheet, the alleged spreadsheet. So on that alone, Mr. Heminger's presentation falls. The Weller Declaration simply cannot substitute for environmental review. Thank you, Ms. Litchman, Mr. Hunt, Mr. Heminger. Thank you all for your helpful presentations here today. The case of the FAA is submitted. Thank you all. That concludes our bracket for today and for this week. We are adjourned.
judges: Murguia, Bade, Lee